# 23-197

## UNITED STATES COURTS OF APPEALS
## FOR THE SECOND CIRCUIT

_____

RUTHETTA L. ALFORD,

*Plaintiff–Appellant,*

v.

NIAGARA FRONTIER TRANSIT METRO SYSTEM, INC.
and ROBERT W. GUISE,

*Defendants–Appellees.*

_____

On Appeal from the United States District Court
for the Southern District of New York

_____

*Brief of Appellant Ruthetta L. Alford*

**Ruthetta L. Alford, Pro Se**
12 Olcott Place
Cheektowaga, New York 14225
Tel.: (716) 816–5881

# ***TABLE OF CONTENTS***

**Page{s}**

Table of Contents……………………………………………………………...…..-2-

Table of Authorities…………………………………………………………...…..-3-

Statues & Rules…....………………………………………………………...…..-4-

Statement of Subject Matter and Appellate Jurisdiction………………….....-5-6-

Statement of the Issues Presented for Review……………………………....-5-6-

Statement of the Case……... . . . . . . . . . . . . . . . . . . . . . . . . . . . ……...-5-7-

Statement of the Facts……... . . . . . . . . . . . . . . . . . …... . . …...….-7-22-

Summary of the Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . …......-21-22-

Argument... . . . . . . . . . . . . . . . . . . . . . . . . . ……………….……-23-29-

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . …..……………………..-30-

Certificate of Compliance…………. . . . . . . . . . . .. . … . ……………...-31-

Certificate of Service………...…………To Be Emailed After Delivery Of Service

### *Table of Authorities*

                                                            **Page**

### **Statutes and Rules:**

Title VII of the Civil Rights Act of 1964,
42 U.S.C.§§ 2000e et seq")…………………………………………..………-7-

New York State Human rights Law,
N.Y. Exec. Law §§ 290 et seq. ("NYSHRL")……………………………………..-6-7-

### **Cases:**

*Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 151
(2d Cir. 2012)……………………………………………………………..………-27-
*Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)…………………………..…………-25-

*Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004)………………..……...-24-25-

*Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324 (1977)……………………………..………-27-

*Johnson v. Booker T. Washington Broadcasting
Service, Inc.*, 234 F.3d 501 (11th Cir. 2000)……………………………..……………-25-

*Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 653
(Dist. Ct. Md. 2002)…………………………………………………………..………-26-

*Littlejohn v. City of New York*, 795 F.3d 297, 307
(2d Cir. 2015………………………………………………………………………....-21-

*Matthews v. Corning, Inc.*, 77 F. Supp. 3d 275, 292
(W.D.N.Y. 2014)………………………………………………………………..…………-26-

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802
(1973). . . . . . . . . . . . . . . . . . . . . . . . . . ...................... . . . . -21-,-22-, -25-. -26-. -27-..-28-

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168
(2d Cir. 2001)……………………………………………………………..…………-23-

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519
(1993)……………………………………………………………………………….-23-

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)………………….…...-27-28-

*United States Postal Service v Aikens,* 460 U.S. 711, (1983)……………………...-27-28-

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)…………………..…-23-

## <u>JURISDICTIONAL STATEMENT</u>

Plaintiff appeals from a Judgment entered on December 13, 2022, in the United States District Court for the Western District of New York, based upon a Decision and Order entered December 12, 2022, of John L. Sinatra, Jr., United States District Judge. (See Decision and Order, A-262; Judgment, A- 264). An Order was entered extending the time to file a Notice of Appeal, and a Notice of Appeal, dated January 11, 2023, was timely filed on February 13, 2022. (A- 265).

With respect to the claims made pursuant to federal statute, the District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 This Court has Jurisdiction pursuant to 28 U.S.C. § 1291. The Notice for appeal was filed on February 23, 2023 (A-265)[1] This is an appeal to the Judgment of the District Court (John L Sinatra, Jr., U.S.D.C.J.) filed December 13, 2022, based upon a Decision and Order that Court dated December 12, 2022, granting Defendants' motion for summary judgment, and dismissing the action. (A-262-264)

Appellant's application to extend the time to file her Appellate Brief was granted and the deadline for filing was extended until August 14,

---

[1] "A" refers to pages in the Appendix

2023.  This Court has jurisdiction over the instant appeal under 28 U.S.C. § 1291. This is an appeal from a final -Decision and Order that disposed of all of Plaintiff's[2] claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the District Court commit reversible error in granting Defendant summary judgment and dismissing Plaintiff's action, where there are issues of fact as to whether Defendants were liable for violating provisions of Title VII as alleged  in the complaint, and augmented in Plaintiff's submission, causing Plaintiff's having mental breakdown, with anxiety and depression, which ultimately led to her forced retirement?

A. Yes. All that she suffered on the job was a result of being the victim of harassment, verbal abuse and other racist conduct committed by Defendant Guise, by reason of Plaintiff's Afro-American race. Defendant NIAGARA FRONTIER TRANSIT METRO SYSTEM, INC., ("NFTA") her employer, should be held liable for the acts of Defendant Guise, its employee and Plaintiff's supervisor, where NFTA condoned his behavior and did nothing to protect Plaintiff from any future abuse, while not taking Plaintiff's accusations seriously, or the harm it caused her.

The Court merely adopted, without independent review, the Report and Recommendation of the Referee in granting summary judgment, before Plaintiff had an opportunity at discover where she could have obtained additional pertinent information that Guise's conduct was not only directed at her, but against other employees over many years, who were too afraid to report it. (Report of Referee., A-157, Decision and Order. A-262)

Rather than allowing Plaintiff to obtain new information to bolster her complaints, the Report, adopted by the Court erroneously found that her allegations were conclusory in nature, instead of finding issues of fact that would preclude summary judgment.

## STATEMENT OF FACTS
## Preliminary Statement

Plaintiff, an Afro-American woman, proceeding *pro se*, brought this action on June 15, 2021, by summons and complaint (A-6), alleging that Defendant NFTA and Robert W. Guise, her immediate supervisor, committed employment discrimination based upon race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§§ 2000e et seq. ("Title VII"), and New York State Human rights Law, N.Y. Exec. Law

§§ 290 et. seq. ("NYSHRL"). Defendants did not file an answer, but instead filed a motion for summary judgment, supported by an affidavit of its counsel Wayne R. Gradl, Esq. (A-23) with exhibits A through S (A-30 to A-86) together with a Local Rule 56 Statement of Undisputed Material Facts (A-87), an Amended Memorandum of Law filed October 28, 2021 (A- 96 ). Plaintiff filed a response to the Memorandum of Law on January 14, 2022. ( A-112)

## **Background Facts:**

The background facts, if taken from the parties' submissions, are too voluminous to assert here. Rather, the following recitation of facts are taken from the Referee's Report (A-157), and where Plaintiff took issue with its findings, she filed Objections to the Report. (A-177) Those recitations in the Referee's Report, together with Plaintiff's Objections, will be summarize here to constitute the background facts.

They are also taken from her responses to Defendants' supporting memorandum of law. (A-112)

Plaintiff, an Afro-American female, began working for Defendant NFTA in September 2001 as an Office Clerk A, and thereafter received

several promotions to her final position as Senior clerk A, when she retired on August 1, 2021, all of which positions were part of the bargaining unit of her union (Amalgamated Transit Unions, Local Union 1343). Her immediate supervisor throughout was Defendant Robert W. Guise ("Guise.")

There was an incident which occurred on June 11, 2020 while Plaintiff was working at the South Park Rail Station, where she had a verbal exchange with Guise, about a work related matter which started peacefully, but ended up with Guise yelling at her and criticizing her about placing cloth/rag on a table which would encourage the public to eat there, to which Plaintiff responded that the public had eaten there for years, as well as on the buses, to which Guise continued to verbally harass her, by standing in the doorway to Plaintiff's office berating her, criticizing George Floyd ("Floyd") and the now infamous incident, claiming he was really not dead. (A-112)

When Plaintiff asked him what the relevance of the Floyd matter to this incident, and whether he believed she should be arrested by a Caucasian police officer and shot or suffocate to death (as occurred to Floyd). When Plaintiff later broke down and cried in front of other

Page 8

workers in response to this harassment, and these workers notified a manager about the incident. This ended with Plaintiff observing Guise laughing about the incident and his treatment of her, which formed the basis for her harassment and hostile workplace charges.  (A-112)

At her co-worker's suggestion, Plaintiff filed a formal harassment complaint (A-37).  Guise responded to her complaint, acknowledging that he had mentioned Floyd during the incident, but claimed it was in a proper context of criticizing Plaintiff for her actions by encouraging other workers to eat at improper locations, which could lead to a "Floyd's type" confrontation and his death, which made no sense. Guise ended his response by further criticizing Plaintiff for not listening to him, which had no credible basis. (Guise Response A-47)

On August 3, 2020, Plaintiff filed a formal complaint against Guise with NFTA's EEOC/Diversity Department (The Department) which handled such matters (not in the record).  The Department completed its investigation on August 17, 2020, sending plaintiff a letter implicitly acknowledging Guise's wrongdoing by advising that he was "reinstructed regarding acceptable behavior in the workplace", directing him to attend sensitivity training classes, suggesting that this was appropriate since

he had not previously been the subject of a harassment complaint since he began employment in 1983. (A-49). NFTA followed up with a letter to Guise, dated September 2, 2020, where NFTA again acknowledged his wrongdoing, directing him to contact the EEO Department to schedule sensitivity classes, while warning him to treat all employees in a professional manner. (A-51)

However, Plaintiff disagreed with a determination not to terminate him, filing various reports by reason of her sustaining emotional injury resulting in stress and depression.

First, she filed an Employee Injury Report with NFTA, reporting that she suffered injuries to the brain, extreme stress, and depression, seeing Dr. Liu-Chen for treatment, and where she again explained the history of her dispute with Guise which was the cause of her problems. (A-56)

She also filed a claim with the N.Y. State Workmen's Compensation Board, but because she could not access and provide supporting medical records, her claim was put in "no further action" status (A-61), and seeking medical treatment, and a medical leave of absence. Her WCB

claim was denied, not on the merits but because she failed to submit supporting documentation. ( A-112)

When she sought with NFTA Human Resources a medical leave of absence, she was advised that based upon the WCB denial of claim, she could no longer qualify for a medical leave of absence, but NFTA advised could seek Disability Leave under the Union's Collective Bargaining Agreement. By letter dated July 1, 2021, NFTA's Human Resources Department, in recognition of her injuries and suffering that rendered her no longer able to work,  citing provisions of her Union's collective bargaining agreement and invited her to submit with New York State a Disability Claim.  (A-67)

Plaintiff responded to NFTA's July 1, 2021, letter, advising them that her last day of work had been September 24, 2020, that her Workmen's Compensation Claim had been revived since she was finally able to provide the necessary medical record of her disability.

By e-mail from Christine Hart, Benefits Coordinator for NFTA, Plaintiff was recognized as being on the list of employees to retire in August.

Plaintiff had chosen to voluntarily retire effective August 1, 2021, rather than suffer continued stress and depression in working with Guise and was advised of potential benefits. By letter dated July 19, 2021, Christine Hart, NFTA Benefits Coordinator, confirmed her retirement date and advised her of the benefits she would be receiving. (A-77)

The Referee in his report, acknowledged that only in a rare case will summary judgment be granted before Defendant has answered and before plaintiff has had an opportunity for discovery to discover information that is essential to the non-moving party, citing case law in support. ( A-164-165 )

However, the Referee also acknowledged that there are exceptions, where the claims are insufficient as a matter of law, so that no amount of discovery would "breathe life into the claims (citations omitted). (A-165)

Here, however, the referee found there to be such an exception, finding that despite plaintiff's filing a response to Defendants' motion, including six exhibits, she has "failed to point to anything even remotely suggesting she suffered the requisite adverse employment action to

support her employment discrimination and retaliation claims, or that she was subjected to a hostile work environment. (A-157)

As the Referee noted, Plaintiff's claims stem from the June 11, 2020, incident with Guise, where Plaintiff alleged that the incident was discriminatory based upon race and created a hostile work environment based upon Guise racially insensitive comments regarding Floyd's death. (A-157)

The Referee noted Defendants arguments in support of summary judgment: (1) that Guise is not responsible in his individual capacity;(2) that her hostile work environment claim is insufficient as a matter of law; (3) that Guise's conduct cannot be imputed to Defendant NFTA, and that (4) Plaintiff never experienced an adverse employment action. (A-157)

The Referee then found that Plaintiff's response did not directly address these arguments, although her characterization of the incident was fraught with allegations of harassing behavior on Guise' part. which, does not involved any stretch of imagination to contend that his yelling at Plaintiff when she did nothing wrong with respect to placing a cloth on a table, together with his reference to the racially created issues over Floyd's suffocation and death to her actions, speaks volumes that his

conduct constituted harassment, and employment discrimination. (A-157)

Nor is it a stretch for her to contend that the incident at least created issues of fact as to whether there was "an adverse employment action" whereas a result she sought medical help, a medical leave of absence, *only to be forced to resign* after she lost her WCB claim w over technicalities, and NFTA did not terminate Guise's employment (where he would continue to be her supervisor) despite NFTA's acknowledging his wrongdoing when it ordered him to participate in sensitivity training.

Specifically with regard to plaintiff's claim of hostile work environment stemming from the subject incident, the Referee reported that Plaintiff in response made no substantive argument in opposition to Defendants' argument that her claims were conclusory and vague insufficient to state this claim as a matter of law, and therefore this claim should be dismissed. ( A-157)

Plaintiff begs to differ and points to her comprehensive response, as well as her ultimate objections to this report, that aw argued below, she has sufficiently stated such a claim at least to create a factual issue

regarding whether a prima facie case was made for the elements of a hostile worker claim.

In this regard, Plaintiff would point out that as she was advised, the Court must apply a liberal standard for pro se litigants with respect to her responses, giving it the flexibility, it deserves, before dismissing these claims. it was reversible error to grant Defendants' motion and dismiss the action, rather than finding, under this liberal standard, plaintiff has sufficiently stated a claim creating issues of fact to defeat summary judgment.

Thus, in Plaintiff's response to Defendants' supporting memorandum of law, upon which their motion was based, she gave a very detailed factually specific, and thorough analysis of her arguments, far more than simply providing conclusory allegations, as the Referee found. They will be summarized here, and the court is referred to Doc 12, filed on January 14, 2022, for her response. (A-112)

She detailed the separate and specific conversations she had with Guise that day, June 11, 2020, occurring between approximately 2:40 p.m. and 2:55 p.m., and why she found his conduct unlawful, forming the basis for her claims. (A-112)

Thus, after the conversation over her usage of the plastic bags in the office of the defendant, initiated by Guise, where she followed him out of her office, and she shared with him about the rag placement on the picnic table at the Allen-Medical Rail Station, he followed her out of the office, yelling at her in a loud voice, and falsely accusing her wrongfully encouraging people to enter the station and eat, to which she denied doing anything wrong, pointing out that eating there had been done for years, at the station, and while on trains. (A-112)

It then got worse for her, when Guise, continuing to accuse her of wrongdoing, blocked her access to her office, and started the conversation about George Floyd, commenting sarcastically that Floyd is "being made a saint due to his death", who "pulled a gun on a pregnant woman. (A-112)

As she expressed to Guise, Plaintiff had had any knowledge of the Floyd incident other than what she read or heard, while asking him what this has to do with her and her conduct? Specifically, how does it relate to his death? She thus implied that Guise was making her conduct the moral equivalent to the Floyd's conduct, and questioned Guise as to whether she should also be arrested, suffocated, or otherwise treated by

Page 16

a Caucasian police officer, similar to what happened to Mr. Floyd's treatment? (A-112)

Guise did not respond, or cease this conversation, then stating that 'Floyd may not even be dead, and the story was a media hoax." (A-112)

Plaintiff became extremely upset by this conversation and the racist implications, where Guise, knowing that Plaintiff is an Afro-American, would engage in such racist comments about a tragic event in the history of Black-White relations, going back to the age of lynchings of black human beings and making light of the actions against Floyd leading to his death, that crying hysterically she told other workers (Dave Hooper and Ricardo Torres) of what happened, and she was advised to speak with her manager, Darren Haag, which she did, and filed a report as Haag advised her. (A-112)

She filed reports and sought medical leave while being treated for stress and depression which resulted, and when he was not terminated, but her medical leave application was denied, she was forced to resign. (A-112)

Plaintiff filed this complaint under title VII, as a person of a protected minority, who, along with her friends, family and co-workers of the same race identified with George Floyd, and the tragic racist assault by the police causing his death was a significant event in the history of Black oppression and discrimination, only to be trivialized and denied by Guise, using it as an example to wrongfully attack her perfectly proper work performance regarding the table cloth which triggered his verbal attack.

People may differ as to their reaction to this event and be less sensitive to the effects it had upon plaintiff, depending upon their race, ethnicity and particular background. However, it does not alter the fact that Plaintiff suffered extreme embarrassment and humiliation resulting from Guise's conduct, rightfully feeling that she was not treated with professionalism and dignity by Guise, who was her supervisor, with the power to make her working life miserable and environment hostile.

Plaintiff contended that his conduct offended not only her, but fellow co-workers, both Afro-American and Caucasian with whom she shared her story, and from whom she also learned that his hostile, racist behavior was not directed only at her, but with other Afro-American co-

workers at well, forming a pattern of racial discrimination, including that of co-worker David Hooper, who also suffered and became overwhelmed and insulted by Guise's treatment toward him.

In this regard, Plaintiff further contended that in her position as managing the Rail Clerical Office, to which she had been appointed, she had encounters with both Afro-American and Caucasian co-workers, where she learned that Guise had similarly conducted himself in an insensitive and disrespectful manner toward them evincing a pattern of discrimination by reason of race. (A-112)

Plaintiff further contended that Defendant NFTA is legally responsible for Guise's conduct, for failing, once notified, to take the necessary steps to protect me and fellow employees who were his victims. Plaintiff never heard of any other management personnel about the incident, and other than directing Guise to sensitivity training did nothing to protect Plaintiff, which she contended should have resulted in his termination, his conduct was so extreme and went unabated over the years. (A-112)

After she complained to manager Haag the day of the incident, I thereafter met with upper management Vivian Rogers ("Rogers") and

DeJuan Hardy ("Hardy,") on June 16, 2020, where she was very upset and cried, asking Rogers why Guise would say such things to me. Guise responded referring to Floyd's death again in an insensitive and racist manner. Other than directing Guise to sensitivity training, Hardy explained that more was not being done, despite the reports of many employees of his abusive conduct over the years.

Guise's justification for his statements was that Floyd may not even be dead, and the story could be a media hoax. (A-112)

She was told not to place a cloth on the office table, which was not true, and which she could explore through discovery, and in any event she was led to believe that there was nothing wrong with it as the public had been eating on the table for many years. (A-112 )

In any event, taking this dispute to the level of racial insults by bringing in the topic of Floyd's treatment and death was totally gratuitous and uncalled for since Plaintiff never initiated such a discussion, and it had no relevance to the work issue at hand. Nor were her feelings about the treatment of Mr. Floyd, were never shared with him or anyone else at work to warrant his responses, despite her strong feelings as an Afro-American about his tragic death, along with the

deaths of Breona Taylor and others who lost their lives as victims of racial injustices and racially motivated police brutality, along with racially motivated rioting in her city

Plaintiff contended that Defendant NFTA, by its inaction had implicitly condoned Guise's behavior given Guise, as well as many other team leaders permission to continue their abusive behavior, destroying company morale, and creating a hostile work environment for all. On several occasions I was told by fellow employees of racial harassment done by Guise, but that they were too fearful to report it for fears of retaliation and loss of employment. (A-112 )

Plaintiff was told that the entire management team was shocked to learn that there was no employer) retribution for his conduct other than directed to sensitivity training. (A-112)

Unfortunately, Plaintiff was not allowed to explore her contentions through the discovery of relevant information because the Court, adopted the referee's report and granting summary judgment before discovery could take place, and it was reversible error to do so.

Had Plaintiff been allowed discovery, she could have obtained such information that the Rail yards had been a very hostile work environment for approximately the past ten years, involving heated verbal altercations in the open, in the men's room and behind closed doors, from employee to employee, supervisor to supervisor, manager to supervisors and managers to employees, some leading to violent fights.

Although it was only one incident, its effects upon Plaintiff were devastating, particularly because Defendant NFTA' inaction, they allowed Guise to continue as her supervisor to whom she had to answer, so that her fears of more incidents added to the trauma she felt from this incident, including constant nightmares.

Plaintiff started the process of making her Harassment Complaint in June 2020. It was delayed because she was having difficulty functioning on the job, while suffering constant debilitating stress and anxiety and panic attacks. When her request for medical leave from the job (as an attempt to be removed from Guise's influence over me) was denied, although she was not terminated, NFTA's failures and inaction left her no choice but to resign her health and welfare. (A-112)

Therefore, although there was no termination of her employment involved, Plaintiff contended that minimally there are issues of fact as to whether an adverse employment action occurred nevertheless, so that summary judgment should have been denied her action remanded back to the district Court for discovery.

## ARGUMENT

## Discrimination and Hostile Work Environment:

Under the test established in the Supreme Court case *of McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).

To establish a *prima facie* case, the plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and (4) that some minimal evidence exists to suggest that the employer acted with discriminatory motivation. *See id*.

Here, Plaintiff met all of the elements to establish a prima facie case. She was a member of a protected class (Afro-American). Based upon her long-standing tenure in a managerial position with NFTA,

where she received several awards and commendations for superior performance, she was clearly qualified.

The establishment of a *prima facie* case creates a rebuttable presumption of a discriminatory basis that shifts the burden to the Defendant to offer a legitimate, nondiscriminatory reason for its adverse employment action. *McDonnell Douglas*, 411 US at 802. Here, Defendant did nothing to protect plaintiff from continued abuse by her supervisor, allowed her to remain under his power and control, and denied her medical leave so she could remove herself from his continued abuse, while doing little other than ordering Guise to attend sensitivity training classes( a tacit admission that his conduct was unacceptable) instead of terminating him as she had asked.

Thus, while the adverse action Defendant committed was not her termination, but its moral equivalent of her loss of employment by forcing her to retire for her own mental well being

Thus, Defendant never articulated such a rational. Even if the defendant articulates such a rationale, "the presumption of discrimination drops out," *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001), and the plaintiff must prove by a preponderance of the

evidence that the legitimate reasons offered by the defendant were a pretext for discrimination.

*See id*. The question then becomes "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). This Court has cautioned, however, that "'[i]t is not enough . . . to disbelieve the employer; the fact-finder must [also] believe the plaintiff's explanation of intentional discrimination.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)).

Here, as plaintiff has pointed out, because she had limited provable evidence that Guise engaged in a long-standing pattern of discriminator conduct over the years against fellow employees who told plaintiff of their experiences of abuse, which would establish a pattern of discrimination, she never had that opportunity by the Court's dismissing her complaint without affording her such discovery.

Secondly, Plaintiff may establish disparate treatment in violation of Title VII "by demonstrating that harassment on [the basis of national origin and/or age] amounted to a hostile work environment." *See Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (citation

omitted). Here, the Referee and the Court should have at least recognized that when NFTA directed sensitivity training for Guise, that he was doing something of a discriminatory nature to warrant such action, while allowing Plaintiff discovery before dismissing her case so she could perhaps uncover, and subpoena other witnesses who had revealed to her similar treatment from Guise, to at least create issues of fact as to whether there was a persistent workplace harassment by Guise based on her Afro-American origins.

Making NFTA liable for Guise's actions as his employer, she showed that she had complained to managers and to the Union about his conduct, but NFTA and ATU 1342 UNION failed to take any significant steps in response to her repeated complaints.

A plaintiff establishes a hostile-work-environment claim, on the other hand, based on a protected trait such as national origin or age when he demonstrates the harassing conduct was severe or pervasive and there is a basis for employer liability. *See, e.g.*, *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (hostile-work-environment claims require two showings: "(1) that 'the harassment was sufficiently severe or pervasive

to alter the conditions of the victim's employment and to create an abusive working environment' and (2) that there is a 'specific basis for the imputing the conduct creating the hostile work environment to the employer"); *Feingold*, 366 F.3d at 149-50 (same).

Courts have recognized that the *McDonnell Douglas* framework does not apply to claims of workplace harassment. In *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501 (11th Cir. 2000), for instance, the Eleventh Circuit reversed a district court's grant of summary judgment where the court had "mistakenly applied a *McDonnell Douglas–Burdine* framework" to the plaintiff's hostile-work-environment claim. *Id.* at 510. The court noted that sexual harassment (or any other type of harassment) cases have "evolved quite separately from other Title VII cases" and stated that "applying a burden-shifting analysis to [sexual harassment cases] would be a departure from precedent." *Id.* at 511. Accord *Matthews v. Corning, Inc.*, 77 F. Supp. 3d 275, 292 (W.D.N.Y. 2014) ("hostile work environment claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test"); *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 653 (D. Md. 2002) ("The *McDonnell Douglas* burden-shifting paradigm cannot logically apply to

claims of hostile work environment. There simply is no legitimate business justification for severe or pervasive sexual harassment.")

On the other hand, to prove intentional discrimination, the Supreme Court adopted a three-stage, burden-shifting paradigm in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first *McDonnell Douglas* stage, a plaintiff must demonstrate the elements of a *prima facie* case by showing he (1) belonged to a protected class, (2) was qualified for the position he held, and (3) suffered an adverse employment action (4) "under circumstances giving rise to an inference of discriminatory intent." *See* IV-JA.1083 (quoting *Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)).

A plaintiff's burden to establish this *prima facie* case "is not onerous" and "was 'never intended to be rigid, mechanized, or ritualistic.'" *Aikens*, 460 U.S. at 715; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). "Rather, it is merely a sensible, orderly way to evaluate the evidence" by requiring the plaintiff to present enough evidence to eliminate the "most common nondiscriminatory reasons for the plaintiff's rejection." *Aikens*, 460 U.S. at 715; *Burdine*,

450 U.S. at 254. Those nondiscriminatory reasons are, in the hiring and promotion context, "lack of qualifications or the absence of a vacancy in the job sought." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358 n.44 (1977).[4]

## <u>CONCLUSION</u>

For all the foregoing reasons, The Order and judgment of the District Court should be reversed, and the action remanded back to that Court for discovery and further proceedings.

Respectfully submitted,

*Ruthetta L. Alford*

_____

Ruthetta L. Alford, Pro Se
*Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP Rules 28 & 32</u>

Ruthetta L. Alford, Appellant appearing Pro Se, does hereby certify, under penalties of perjury and pursuant to FRAP Rules 28.1(e)(2) and 32(a)(7)(B), the following:

1. The within Brief was generated on a computer.

2. The margins are one (1) inch on all sides.

3. The typeface is "Century Schoolbook", 14 point.

4. The line spacing is double space.

5. The word count, excluding those portions excluded under applicable rules is 4,834 words.

Dated: August 13, 2023

*Ruthetta L. Alford*

_____

RUTHETTA L. ALFORD

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Alford

CERTIFICATE OF SERVICE*

Docket Number: 23-197

NFTA-Metro

I, Ruthetta L. Alford , hereby certify under penalty of perjury that
(print name)

on September 5, 2023 I served a copy of Court Letter for Two
(date)

Additional Briefs. Postage Receipt Stamped - 09/5/23
(list all documents)

by (select all applicable)**

___ Personal Delivery          ___ United States Mail          ___ Federal Express or other
                                                                    Overnight Courier

___ Commercial Carrier          X  E-Mail (on consent)

on the following parties:

NFTA-Metro          181 Ellicott St.  Buffalo, NY 14203
Name                Address              City      State    Zip Code

Attn: Wayne R. Giradi - Wayne.Gradi@NFTA.com
Name                Address              City      State    Zip Code

_____
Name                Address              City      State    Zip Code

_____
Name                Address              City      State    Zip Code

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or
proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously
filed.

**If different methods of service have been used on different parties, please complete a separate
certificate of service for each party.

September 5, 2023                          Ruthetta S. Alford
Today's Date                               Signature

Certificate of Service Form (Last Revised 12/2015)